

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
TYRELL J. NORRIS[1],

                    Petitioner,

- against -

WILLIAM D. BROWN,

                    Respondent.
----------------------------------------------------------x

07 CV 3934 (NG) (VVP)

**OPINION AND ORDER**

**GERSHON, United States District Judge:**

Tyrell J. Norris, a prisoner incarcerated as a result of his conviction in the New York State Supreme Court, Kings County, for four counts of Sale of a Controlled Substance in the Third Degree and Conspiracy in the Third Degree, acting *pro se*, petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner alleges that he is in custody in violation of the Constitution of the United States and raises ten grounds for relief: (1) the convictions were against the weight of the credible evidence and the evidence was legally insufficient to sustain his conviction for the four counts of Sale of a Controlled Substance in the Third Degree; (2) the conviction was against the weight of the credible evidence and the evidence was legally insufficient to sustain his conviction for Conspiracy in the Third Degree; (3) the volume of evidence at trial that did not apply to defendant had an inflammatory effect on the jury, preventing a fair trial; (4) the trial court's charge pursuant to *Allen v. United States*, 164 U.S. 492 (1896), coerced the jury; (5) he was twice placed in jeopardy for the same offense; (6) prosecutorial misconduct during summation prevented him from receiving a fair trial by an unbiased jury; (7) (a) prejudicial statements by a police witness and the assistant district attorney deprived him of a fair trial, and (b) he was deprived of his right to confront a witness against him; (8) he was punished for maintaining his innocence; (9) the state court's failure to sanction the State for its

---

[1] In some documents, petitioner is also referred to as Norris Tyrell, but the name under which he was convicted in state court was Tyrell J. Norris.

1

failure to disclose material specified in *People v. Rosario*, 9 N.Y.2d 286 (1961), requires reversal; and (10) the indictment was improperly amended. For the reasons set forth below, the petition is denied.

## The Trial

### I.  Trial Testimony

Taken in the light most favorable to the prosecution, the evidence presented at the trial of petitioner and four co-defendants established the following facts.[2] On March 5, 2002, the New York City Police Department ("NYPD") initiated a narcotics investigation, called the "Good Neighbor Operation" ("the Operation"), within the Cypress Hills Housing Project ("Cypress Hills" or the "Housing Project") in the East New York section of Brooklyn. As part of that investigation, three undercover NYPD officers moved into the complex, giving the appearance that they were residents. The undercover officers purchased marijuana, heroin, cocaine, and crack cocaine from multiple individuals during the five months that they lived in Cypress Hills. The Housing Project *de facto* is divided into four sections, colloquially called "Front", "Team Side", "Middle" or "Ruffryder", and "Back" or "EU". Each section is associated with a specific group that controls the area for purposes of drug distribution and that, from time to time, resorts to violence to protect its territory.

On four separate occasions,[3] petitioner, a member of one of the four groups that sold narcotics within Cypress Hills, participated in the sale of drugs to undercover officers. On September 18, 2002, two of the undercover officers drove around in an unmarked vehicle with tinted windows, identifying people from whom they purchased drugs. Based on these identifications, the NYPD arrested sixty people, including petitioner.

---

[2] Only those facts relevant to Mr. Norris's petition are provided here.

[3] Detective Ferguson testified that on May 17, 2002, Mr. Norris was standing with three other men and asked Ferguson: "Are you looking? These are my sons. If you need anything come check them." Subsequent to the conversation, one of Norris's "sons" completed a narcotics transaction with the undercover detective at a nearby location. Norris was convicted for this sale at trial; as discussed below, the Appellate Division vacated his conviction on this count, holding that it was against the weight of the evidence.

2

Petitioner was tried with four codefendants, all of whom were charged with Criminal Sale of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.39(1)), as well as various degrees of Conspiracy. One co-defendant was also charged with—and convicted of—Assault in the Second Degree (N.Y. Penal Law § 120.05(2)).

At trial Detective Ferguson testified that he twice purchased crack cocaine from Mr. Norris; once on April 23, 2002 and once on April 24, 2002. Undercover officer 1564 ("UC 1564") testified that she purchased crack cocaine from Norris on the afternoon of April 23, 2002. Each purchase was field tested, vouchered, and sent to the Police Crime Lab for analysis.

Evidence regarding two prior convictions was also amitted. Detective William Carson testified that he executed a no-knock warrant at Mr. Norris's address on April 6, 2001, and recovered 121 zip lock bags of crack cocaine, a marijuana cigarette, 78 zip locks of heroin, 3 bags of marijuana, ammunition, a triple beam scale, a bullet proof vest and $347 in cash. The prosecution entered into evidence a certificate of disposition and plea minutes for the 2001 arrest. Tr. 707, 736. Police officer Marie Guarino also testified that she executed a no-knock warrant at Mr. Norris's address on January 25, 2002, and recovered 25 zip lock bags of crack cocaine as well as $232 in cash. The prosecution entered into evidence a certificate of disposition and plea minutes for Mr. Norris's guilty plea in that case. Tr. 1519, 1522, 1529.

Among the people who testified at trial was Detective Capolino, the case officer who implemented the narcotics investigation. During the Operation, Capolino pretended to be a rookie uniformed housing officer. This role permitted him to remain in close proximity to the undercover officers in the event that they were endangered. While regularly riding through the complex on his scooter, Capolino observed the residents of Cypress Hills and learned many of their faces and names. After each time the undercover officers purchased drugs in the complex, they called Capolino via mobile phone and described to him the drugs purchased, the place of the sale, and the physical characteristics of the seller. Capolino, still in his role as a rookie housing officer, would then approach the seller and take

3

down his pedigree information. At trial, Capolino testified that, while driving around on his scooter, he would occasionally write notes in his memo book, which he later discarded. However, he did preserve his Daily Activity Reports, in which he detailed his activities with respect to the operation.

With regard to one of petitioner's co-defendants, Charles Joyner, Capolino testified that he first learned Joyner's name from a confidential informant, as opposed to discovering it through his observations in his time at the Housing Project. At trial, when asked the name of the confidential informant, Capolino hesitated to give the informant's name (offering instead his CI number) citing concerns for the informant's safety. When the trial judge prompted Capolino to reveal the informant's name, the prosecutor asked the court to reconsider in light of safety concerns. After a side bar, it was determined that, since none of the defendants "wished to pursue the information that the informant gave," there was no relevance to disclosing his name, and any reference to him (including concerns for his safety) would be stricken from the record. Tr. 237-241.

Detective Capolino's supervisor, Lieutenant Kinley, a 15-year veteran of the NYPD, also testified. He stated that during the Operation he received radio transmissions with descriptions of drug sellers from whom undercover officers had purchased narcotics, and he would occasionally take handwritten notes with the descriptions. He testified that he no longer had those notes, did not know what he had done with them, and had never turned them over to the District Attorney's office. He also testified that the undercover officers wrote down descriptions of all sellers in their Buy Reports.[4] Defendants objected that Capolino's and Kinley's discarding of their notes resulted in a violation of *Rosario*, and moved for a mistrial. The request was denied.

All three undercover officers testified at trial. In addition to describing the individual instances detailed above in which petitioner and his co-defendants sold drugs to them, the undercover officers testified about indications of a conspiracy to sell drugs in the Housing Project. For example, Detective

---

[4] A "Buy Report" contains a synopsis of the purchase, including the date, time, and location thereof, and a very basic description of the person who sold the drugs, *e.g.*, the seller's sex, race and height.

4

Ferguson described one occasion when he asked to buy drugs from petitioner. Norris introduced Ferguson to his associates, told Ferguson that these "associates" would also be willing to sell drugs to him, and indicated that, to purchase drugs from Norris or his associates, the detective needed to go to a different location, because at that time they were in another group's area. Detective Ferguson went to the designated location and purchased drugs from co-defendant Santos. On another occasion, Detective Ferguson approached an unidentified man and asked to purchase drugs. The man told Ferguson that "everybody is working together" and walked Ferguson to co-defendant Booker Wilson, who then proceeded to sell drugs to the detective.

Detective King testified that individuals from whom she had previously purchased drugs in the Housing Project told her that various sellers worked together, and that they had to watch each other's backs. King testified that those individuals explained to her that a truce was declared after a shooting between two of the drug-selling groups in the Housing Project. The undercover officers also described three occasions in which they purchased drugs from Dwayne McDonald, a minor under the age of 16 at the time of the investigation and of his arrest in 2002 as part of the Operation.

In addition to these police witnesses, two cooperating witnesses testified at trial. The first was Bernard Roachford, a former drug dealer, who testified about his past collaboration in selling drugs with petitioner and his co-defendants. Roachford explained how various groups selling drugs in the Housing Project divided up the territory where each would sell drugs, and he described a recent shooting that resulted from someone selling drugs outside his delineated territory. The second testifying cooperator was Dwayne Hill, another former Cypress Hills resident, who testified that he had dealt drugs, but only in the "EU" area, because he—and the others involved in drug dealing—knew they were only to sell drugs in their designated areas, and that if they sold in other areas, they would face "serious problems."

Petitioner did not put on a defense case. However, Dwayne McDonald testified on behalf of another defendant. McDonald stated that he sold drugs in the project, but that he did so by himself, and

not in agreement with others. He testified that he obtained his drugs for sale in Manhattan. He also testified that he never saw any of the defendants doing anything illegal.

## A. Amendment of Indictment, *Allen* Charge, and Verdict

After both the prosecution and the defense rested, before charging the jury, the prosecution, over defense counsel's objection, amended the indictment to shorten the conspiracy timeframe from commencing in March 1998 to January 2000 in order to better conform to the evidence presented at trial.

The jury began its deliberations on November 17, 2003. In the morning of November 20, 2003, the jury sent a note stating, "We are a hung jury." In response to a note from the trial judge, the jury clarified that it had reached verdicts as to all of the defendants on the drug sale charges, but that it had not reached a verdict as to any defendant on the conspiracy charges. The court then instructed the jury as follows:

> As I told you when I gave you the case for your deliberations, that one of the possibilities was that it might take you awhile to agree on a verdict in this case. It is not uncommon for it to take awhile for twelve people to agree on what the right verdict should be. The parties in this case chose you because they believe that you were the best people to decide the case. There is no better jury than you to make this decision. Each of you has the right to take an opinion and hold that opinion. I cannot tell anyone to change his or her mind, but you have a sworn duty to try to reach a verdict in this case. You must listen to what other jurors are saying. I'm a long way away from giving up hope that you may yet arrive at a verdict.

Defense counsel objected to the inclusion of the words "I'm a long way away", but otherwise did not object to the court's instruction. Tr. 2243.

On November 21, 2003, the jury convicted petitioner of four counts of Criminal Sale of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.39(1)), and of Conspiracy in the Third Degree (N.Y. Penal Law § 105.13). He was acquitted of Conspiracy in the First Degree (N.Y. Penal Law § 105.17), and Conspiracy in the Second Degree (N.Y. Penal Law § 105.15). On December 15, 2003, petitioner was sentenced to consecutive prison terms of five to ten years on each of the four drug Sale counts, and to a concurrent three-and-one-half to seven-year term on the Conspiracy count.

## B. Post-Conviction History

On April 26, 2005, Mr. Norris, through counsel, appealed to the Appellate Division, Second Department, claiming all ten grounds for appeal that he raises here.

By a decision and order dated November 8, 2006, the Appellate Division, modified the judgment of the trial court, to the extent that it dismissed one Sale count relating to the May 17, 2002, purchase where Mr. Norris was not present during the transaction, and it vacated the sentence imposed for that conviction, after finding the verdict against the weight of the evidence. *People v. Norris*, 34 A.D.3d 501 (2d Dep't 2006).

The Appellate Division affirmed petitioner's convictions on the other three Sale counts and on the Conspiracy count, holding that: the evidence on these counts was legally sufficient and not against the weight of the evidence; admission into evidence of petitioner's previous conviction for possession of narcotics did not violate the prohibition against double jeopardy because it was relevant to the conspiracy charges, which required proof of an overt act in furtherance of the conspiracy, and petitioner's previous conviction for narcotics possession did not bar his prosecution for conspiracy; the trial court did not abuse its discretion by failing to sanction the People for the loss of the *Rosario* material because the petitioner did not carry his burden of showing a reasonable possibility that the loss or destruction of the notes in the officer's memo book materially contributed to the result of the trial or caused him any prejudice; that the court's *Allen* charge was not coercive; and that his claim concerning the amended indictment is without merit.

Finally, the court held that defendant had not preserved his claims that: the trial court penalized him for exercising his right to a trial; the volume of evidence introduced at trial and the district attorney's summation deprived him of a fair trial; and that he was denied the right to confront a witness against him. The court additionally held that all of the unpreserved claims were without merit.

Mr. Norris sought leave to appeal to the New York State Court of Appeals, raising all of the claims he previously raised in his appellate brief. On January 12, 2007, petitioner's application for leave to appeal was denied. *People v. Norris*, 8 N.Y.3d 848 (2007).

On September 17, 2007, Norris filed the instant petition.

## II. Discussion

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), a federal court may grant an application for a writ of habeas corpus on behalf of any person in custody pursuant to a state court judgment with respect to a claim that was "adjudicated on the merits" only if it concludes that the adjudication of the claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Determination of factual issues made by a state court "shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The Supreme Court has instructed that "clearly established federal law" "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to . . . clearly established federal law," if it "contradicts the governing law set forth in [Supreme Court] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Id.* at 405-06. A decision is "an unreasonable application" of established federal law if the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* at 407-08. In other words, "a federal habeas court may not issue the writ simply because the court

8

concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly," but rather, "that application must be unreasonable." *Id.* at 411. The Court of Appeals for the Second Circuit has refined this standard, holding that, while "some increment of incorrectness beyond error" is required, "the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation omitted).

### B. Exhaustion and Procedural Default

Petitioner has exhausted his claims. However, a petition may not be granted if the petitioner has defaulted his federal claims in state court, either by failing to preserve them for state appellate review or by failing to present the claims to the appropriate state forum within the time period prescribed by law. *Grey v. Hoke*, 933 F.2d 117, 119-20 (2d Cir. 1991).

A state procedural bar is an independent and adequate state ground that supports the decision to deny a petitioner's claim. *Coleman*, 501 U.S. at 729. The independent and adequate state ground doctrine provides that a federal court may not review a question of federal law decided by a state court if the decision of the state court rests on a substantive or procedural state law ground that is independent of the federal question and adequate to support the judgment. *Id.* This holds true even when a state court has relied on a state procedural default, but has also ruled in the alternative on the merits of the federal claim. *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 2000); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810 n.4 (2d Cir. 2000)("where a state says that a claim is 'not preserved for appellate review' and then rules 'in any event' on the merits, such a claim is not preserved.").

"That does not mean, however, that federal habeas review is barred every time a state court invokes a procedural rule to limit its review of a state prisoner's claims." *Cone v. Bell*, 129 S. Ct. 1769, 1780 (2009). "[T]he adequacy of state procedural bars to the assertion of federal questions . . . is not within the state's prerogative finally to decide; rather, adequacy 'is itself a federal question.'" *Id.*

9

(quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)). If a federal habeas court determines that the procedural state law ground is inadequate, it may review the federal claim on the merits.

Even if a state prisoner defaults his federal claims pursuant to an "independent and adequate state procedural rule," a habeas court may consider defaulted claims if the petitioner can show "cause for the [procedural] default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," i.e., that petitioner is actually innocent. *Coleman*, 501 U.S. at 750; *see also Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

### i. Unpreserved Claims

Here, petitioner failed to preserve five of his claims for appellate review. First, he claims there was insufficient evidence produced at trial to sustain the Sale convictions. Second, he claims he was denied a fair trial by the inflammatory effect of the volume of evidence at trial that did not apply to him. Third, he claims that improper comments made by the prosecution during summation biased the jury. Fourth, he claims he was denied a fair trial because he was denied the right to confront a witness.[5] Finally, he claims that the court penalized him for exercising his right to a trial. The Appellate Division held all of these claims to be unpreserved for appellate review. *Norris*, 34 A.D.3d at 503.

Both the Supreme Court and the Second Circuit, specifically addressing New York law, have held that failure to object contemporaneously is an adequate and independent state ground that bars federal review. *See Wainwright*, 433 U.S. at 86; *Garcia v. Lewis*, 188 F.3d 71, 79 (2d Cir. 1999).

With regard to his second barred claim, Mr. Norris asserts that "to the extent defense counsel failed to move to sever his case from that of his co-defendants, or to adequately object to the fact that the probative value of evidence was outweighed by its prejudicial effect, he was ineffective."

---

[5] This is part of petitioner's seventh claim. His claim that the jury was prejudiced by a police witness's and the prosecutor's comments concerning the safety of a confidential informant will be addressed on the merits.

10

When asserting an ineffective assistance of counsel claim as a basis for overcoming a procedural default, a petitioner must establish constitutionally ineffective assistance of counsel, *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000), that is, a petitioner must demonstrate both that counsel's performance was below an objective standard of reasonableness and that, but for counsel's deficient performance, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668 (1984). If a petitioner fails to demonstrate either that counsel's performance was deficient or that the result would have been different, the ineffective assistance of counsel claim fails. *Strickland*, 466 U.S. at 700.

The performance prong of *Strickland* requires petitioner to overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. There is no reason to believe petitioner's trial counsel would have been successful if he had brought a motion to sever defendant from his four co-defendants. New York law permits joinder where "all the offenses charged are based on a common scheme or plan." N.Y. Crim. P. Law § 200.40(1)(b). A strong public policy favors joinder "because it expedites the judicial process, reduces court congestion, and avoids the necessity of recalling witnesses." *People v. Mahboubian*, 74 N.Y.2d 174, 183 (1989). Although New York trial courts have authority to sever when one defendant's "comparatively minor role" creates a "likelihood of prejudice to him," N.Y. Crim. P. Law § 200.40, or when the "core" of one defense is "in irreconcilable conflict" with the other, *Mahboubian*, 74 N.Y.2d at 183, the severance decision remains committed to the trial court's discretion. N.Y. Crim. P. Law § 200.40.

Here, petitioner and his four co-defendants were indicted as participants in a sixty-two person conspiracy to distribute drugs throughout Cypress Hills. Much of the evidence at trial that did not go to petitioner's independent drug sales went to evidence of the conspiracy.[6] Further, petitioner and his co-

---

[6] It is worth noting that petitioner was acquitted of first and second-degree conspiracy, which would support a conclusion, contrary to the petitioner's substantive argument, that the jury was not prejudiced by the volume of evidence at trial that did not pertain directly to the petitioner's individual drug sales.

11

defendants asserted defenses that were not only not irreconcilable, but they were congruent, in that they each exploited similar defects in the People's case, such as the lack of fingerprint evidence, taped phone calls, use of recording equipment and the failure of Detective Capolino to turn over his daily activity reports. Tr. 1846 -1981. Given that petitioner and his co-defendants were charged in a common conspiracy with common evidence and witnesses and that their defenses were not in conflict, there is no reason to believe that the trial judge would have granted severance had such a motion been brought.

Failure to make a meritless argument is not ineffective assistance of counsel. *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999). Petitioner has not demonstrated that, in failing to bring a motion to sever, when severance was not required under New York law, his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and there is no reasonable probability that, had such a motion been brought, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 687-694. With respect to his other unpreserved claims, petitioner offers no basis for overcoming the default.

Because the appellate ruling was explicitly based on an adequate and independent state procedural default, and because petitioner does not show cause and prejudice or a fundamental miscarriage of justice to overcome the procedural bar, I find that the petitioner's claims regarding insufficiency of the evidence on the Sale counts, the inflammatory effect of the volume of evidence at trial, improper comments made by the prosecution during summation, denial of his right to confront a witness, and that he was punished for maintaining his innocence are barred from habeas review.

### C. Merits

#### i. Weight of the Evidence and Sufficiency of the Evidence for Conspiracy in the Third Degree

Mr. Norris's claim that the verdict was against the weight of the evidence is not cognizable on federal habeas review as it does not raise a constitutional issue. *See Maldonado v. Scully*, 86 F.3d 32, 35

(2d Cir. 1996); *Correa v. Duncan*, 172 F.Supp.2d 378, 381 (E.D.N.Y.2001) (a weight of the evidence claim is "a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5)" and is therefore not reviewable on a habeas corpus petition).

Petitioner also argues that the State did not offer sufficient evidence to support his conviction for Conspiracy in the Third Degree. Petitioner claims that, in order to be convicted of Conspiracy in the Third Degree, the State must have established Mr. Norris's agreement to sell drugs with a person under 16 years of age. According to petitioner, the testimony of Dwayne McDonald clearly did not support such an allegation, since Mr. McDonald stated that he had acted alone.

Petitioner bears "a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficiency of the evidence." *Mannix v. Phillips*, 619 F.3d 187, 201 n. 14 (2d Cir. 2010) (citing *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000)). A petitioner is entitled to habeas relief only "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Policano v. Herbert*, 507 F.3d 111, 115 (2d Cir. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 324 (1979)).

In considering the sufficiency of the evidence, "a federal court must look to state law to determine the elements of the crime." *Fama*, 235 F.3d at 811 (internal citation omitted); *see also Einaugler v. Supreme Court of State of N.Y.*, 109 F.3d 836, 839 (2d Cir. 1997).

Under New York Law, "a person is guilty of a Conspiracy in the Third Degree when, with intent that conduct constituting a Class B or a Class C felony is performed, he, being over eighteen years of age, agrees with one or more persons under sixteen years of age to engage in or cause the performance of such conduct." N.Y. Penal Law § 105.13. Here, a rational jury could have found beyond a reasonable doubt that various groups in Cypress Hills agreed to distribute drugs in specified areas and that Mr. Norris, an adult, participated in the conspiracy.[7] Evidence to this effect included testimony

---

[7] The conspiracy was alleged to have taken place throughout Cypress Hills and to include members of more than one of the four groups that each controlled an area for drug-distribution purposes.

13

from undercover officers regarding various Cypress Hills sellers' practice of working together, testimony from undercover officers describing Mr. Norris's drug sales assisted by other Cypress Hills residents, and testimony from cooperating witnesses regarding the division of the complex into various areas where each group operated while not being allowed to encroach on another's territory.

Regarding the involvement of a minor in the conspiracy, the jury was presented with conflicting testimony. The undercover officers testified about purchasing drugs from McDonald, a minor, within an area in Cypress Hills controlled by one of the four groups. During those sales, the officers testified that he was either accompanied by adults who regularly sold drugs within the Housing Project, or would receive drugs from the adults who regularly sold drugs within the Housing Project. Roachford, the cooperating witness, testified that he saw McDonald chasing several of the defendants after a shooting that was related to the drug territory dispute. From this testimony, the jury could reasonably infer that, despite McDonald's own testimony to the contrary, McDonald conspired with adults to sell drugs.[8] Therefore, a rational trier of fact could find that petitioner and McDonald both were involved in the drug distribution conspiracy (even if they did not directly conspire with one another), and that there was sufficient evidence to support a conviction on Conspiracy in the Third Degree.

The Appellate Division's decision to uphold the Conspiracy count therefore was not an unreasonable application of established Supreme Court precedent.

ii. **Double Jeopardy**

---

[8] On the other hand, in addition to McDonald's testimony that he acted alone, the cooperator Hill testified that there was at least one person independently selling drugs in Cypress Hills. If credited, Hill's testimony would suggest that a person could sell drugs in Cypress Hills without being affiliated with any of the four main groups. However, a reasonable jury could credit the undercover officers' testimony over McDonald's and Hill's.

Moreover, a jury could reasonably conclude that a minor would not have been allowed to sell drugs in the housing project without an agreement with one of the four main groups and could reasonably have disregarded McDonald's testimony to the contrary.

14

Petitioner claims that his conviction for conspiracy was barred by double jeopardy. Mr. Norris argues that the use of his previous drug convictions to support the conspiracy charge constitute double jeopardy.

The Appellate Division found the introduction of petitioner's previous convictions for possession of narcotics relevant to the conspiracy charges, as proof of overt acts in furtherance of the conspiracy, and therefore properly admitted into evidence. *Norris*, 34 A.D.3d at 502.

With regard to the use of petitioner's previous narcotics convictions as proof towards the conspiracy charge, it is well settled that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). If a statute requires proof of an additional fact, defendant is not exempt from prosecution under each statute. *Id.* Thus, introduction of the petitioner's prior convictions for criminal possession of a controlled substance as evidence toward the conspiracy count did not constitute double jeopardy and the Appellate Division's rejection of petitioner's double jeopardy claim was not an unreasonable application of clearly established federal law.

### iii. *Rosario* Claim

Petitioner claims that the trial court erred by not sanctioning the prosecution for failure to preserve and disclose Lt. Kinley's handwritten notes as "written or recorded statements . . . made by . . . person[s] whom the prosecutor intends to call as a witness at trial, and which relate[] to the subject matter of the witness's testimony," as required by *People v. Rosario*, 9 N.Y.2d 286 (1961) (*codified at* N.Y. Crim. Proc. Law ("C.P.L.") § 240.45(1)). However, because a claim of a *Rosario* violation does not implicate a question of federal constitutional law, this court cannot consider it. *Rosario* is a "discovery rule," and the state courts have stressed that it is "not based on the State or Federal Constitution." *People v. Jackson*, 78 N.Y.2d 638, 644 (1991). Therefore, "federal courts will not

15

review *Rosario* claims [contained] in a habeas petition." *Sam v. Brown*, No. 00-CV-4170, 2002 WL 31102644, at *5 (E.D.N.Y. Sept. 10, 2002).

### iv. *Allen* Charge

Petitioner alleges that the trial judge's charge pursuant to *Allen v. United States*, 164 U.S. 492 (1896) ("*Allen* charge") coerced the jury, in violation of petitioner's due process rights. Petitioner objects particularly to the inclusion of the following sentence in the charge: "I'm a long way from giving up hope that you may yet arrive at a verdict." Tr. 2243. This claim is without merit.

A trial court has discretion to give the jury an *Allen* charge when the jury states that it cannot come to a decision and that no further progress is anticipated. *United States v. Crispo*, 306 F.3d 71, 75 (2d Cir. 2002). The charge can encourage the jurors to listen to each other, but it cannot "tend[] to coerce undecided jurors into reaching a verdict." *Id.* at 77. To determine whether an *Allen* charge is coercive, a court must consider the charge "in its context and under all the circumstances." *Spears v. Greiner*, 459 F.3d 200, 205 (2d Cir. 2006) (citing *Lowenfield v. Phelps*, 484 U.S. 231, 237 (1988) (internal citations omitted)). Coercion is suggested—though not always present—when a jury returns a verdict "soon after receiving the supplemental instructions." *Id.* at 240.

Here, the jury, after deliberating for three days, sent a note to the judge stating, "we are a hung jury." Upon clarification, the court ascertained that the jury had reached verdicts as to the drug sale charges for the five defendants but was not able to reach verdicts with regard to the conspiracy charges. On the morning of November 20, 2002, the trial judge read the jury an *Allen* charge, stating, in sum and substance, that (1) each of the jurors had a right to his own opinion and the court would not tell anyone to change his mind; (2) the jurors had a duty to try to reach a verdict; and (3) in fulfilling this duty, the jurors were required to listen to other jurors. In conclusion, the court stated: "I'm a long way from giving up hope that you may yet arrive at a verdict. I direct you to continue your deliberations, try to reach a verdict on all counts in this case." Tr. 2243. Immediately after the charge, the jury asked to review the trial testimony of Dwayne Hill regarding co-defendant Charles Joyner and the testimony of

16

police officers who responded to a 911 call when Joyner was shot. The jury reached a verdict as to all defendants the following afternoon.

The court's *Allen* charge was entirely proper. The trial court emphasized each juror's right to his beliefs, simply encouraging the jurors to listen to each other openly and to consider others' opinions— both requirements of satisfactorily non-coercive *Allen* charges. *Spears*, 459 F.3d at 205. He urged them to "try to reach a verdict"—the word "try" being a far cry from coercion. The Second Circuit has upheld convictions after *Allen* charges similar to the one at issue here. *See Campos v. Portuondo*, 320 F.3d 185, 186 (2d Cir. 2003). In *Campos*, the trial court's *Allen* charge—which the Circuit approved—included the following language: "I know you were very close last night, and that very fact alone has given me reason to hope that further efforts may be successful." *Id.* In addition, the jury here reached a verdict a full day-and-a-half after the *Allen* charge, after requesting two readbacks of testimony, and after a total of five days of deliberating. Thus, in view of the language of the charge and the surrounding circumstances, the trial court's *Allen* charge was not coercive, and the Appellate Division did not unreasonably apply Supreme Court precedent in approving the instruction.

v. **Reference to the Safety of a Confidential Informant Prejudiced the Jury**

Petitioner claims he was denied a fair trial because the jury was prejudiced when reference was made by the prosecutor and a police witness, Detective Capolino, to the safety of a confidential informant. The Appellate Division found this argument to be without merit.

"When prosecutorial misconduct is alleged, a new trial is only warranted if the misconduct is of sufficient significance to result in the denial of the defendant's right to a fair trial." *United States v. McCarthy*, 54 F.3d 51, 55 (2d Cir.1995) (internal quotations omitted). "Inappropriate prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal conviction obtained in an otherwise fair proceeding." *United States v. Thomas*, 377 F.3d 232, 244 (2d Cir.2004)(citing *United States v. Young*, 470 U.S. 1, 11-12 (1985)). "When considering whether an improper comment caused the defendant prejudice, we consider three factors: (1) the severity of the misconduct, (2) the

17

measures adopted to cure the misconduct, and (3) the certainty of conviction absent the improper statements." *Id.* at 245. A petitioner seeking to overturn a conviction based on inappropriate prosecutorial comments faces substantial hurdles. "To prevail on his claim, [defendant] must demonstrate that, absent the misconduct, he would not have been convicted." *Id.*; *United States v. Elias*, 285 F.3d 183, 192 (2d Cir.2002).

Capolino's testimony regarding the confidential informant was relevant only to petitioner's co-defendant Charles Joyner, not to Mr. Norris. On cross examination, he was asked to name the confidential informant who first identified Charles Joyner to him. After overruling an objection from the prosecution, the trial judge instructed the witness to answer:

> **THE WITNESS:** Your Honor, should I use a CI number or just the person's full name?
> **MR. GREEN [Joyner's Attorney]:** I want the name judge.
> **THE COURT:** It's a civilian, so if you have the civilian's name.
> **THE WITNESS:** Wouldn't that jeopardize the safety of that person?

Tr. 226:1-7. Following objection from all defense counsel, the trial judge instructed the witness to answer with the informant's name. The prosecutor objected by saying: "Judge, I would ask the Court to reconsider in light of the safety concerns of the confidential informant." Tr. 226:17-18. After all defense counsel objected to this comment from the prosecutor, the trial judge recessed to hear argument on the issue. During this colloquy, defense counsel and counsel for petitioner's co-defendants confirmed they did *not* wish to call the confidential informant as a witness, the trial judge determined the name of the informant was irrelevant and sustained the prosecutor's objection on relevance grounds. Tr. 237:7-19. In denying the request for the name of the informant, the trial judge gave the following instruction:

> When we left off there had been an objection made by Mr. Aaron to the question that the witness had been asked about the name of the person who was mentioned, of an informant, the name of the person who gave the name of Charles Joyner. I'm sustaining the objection. It's irrelevant to this trial. Therefore, the answer is stricken. All of the comments made by the witness and/or counsel are also stricken from the record. You must disregard it.

18

Tr. 242:21-243:4.

The effect of the comments from the witness and prosecutor, particularly in light of the curative instructions given by the trial judge, did not infect the trial with a level of unfairness sufficient to make petitioner's conviction a denial of due process. The testimony in question concerned petitioner's co-defendant and not petitioner, the testimony was stricken from the record, and the jury was instructed to disregard all comments made by the witness and counsel. Given the presumption that juries follow curative instructions, *Rustici v. Philips*, 497 F.Supp.2d 452, 478 (E.D.N.Y.2007), petitioner fails to demonstrate why these instructions did not effectively neutralize any prejudice. Further, petitioner has not shown that, absent the comments regarding the safety of a confidential informant, he would not have been convicted. Thus, in view of the nature of the comments regarding the safety of a confidential informant and the relevance of those comments to petitioner, the trial court's striking of the testimony and curative instruction, the Appellate Division did not unreasonably apply Supreme Court precedent in finding that petitioner's due process claim was without merit.

### vi. **Improperly Amended Indictment**

Mr. Norris claims that the indictment was improperly amended, after the close of evidence, to include two additional years. The Appellate Division held, and I agree, that this claim is without merit.

The indictment was actually amended to shorten the time period of the conspiracy by two years. Tr. 1843. An amendment to an indictment is acceptable when it does "not alter any essential element of the charged conspiracy." *United States v. Salmonese*, 352 F.3d 608, 620 (2d Cir. 2003) (quoting *United States v. Frank*, 156 F.3d 332, 337 (2d Cir. 1998)); *United States v. Weiner*, 152 Fed.Appx. 38, 42-43 (2d Cir. 2005) (stating that a narrowed time focus with no material difference in the factual circumstances of the charged conspiracy does not support reversal).

Because the shortening of the conspiracy's time-frame did not alter any essential element of the charged conspiracy, it was not an unreasonable application of established Supreme Court precedent for the Appellate Division to uphold it.

19

## III. Conclusion

For the foregoing reasons, Mr. Norris's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED. As petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253.

**SO ORDERED.**

s/NG

**NINA GERSHON**
**United States District Judge**

Dated: June 22, 2011
Brooklyn, New York